IN THE SUPREME COURT OF MISSISSIPPI
NO. 92-CA-01153-SCT

*MILLIKEN & MICHAELS, INC.*

*v.*

*FRED NETTERVILLE LUMBER COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/92 |
| TRIAL JUDGE: | HON. RICHARD T. WATSON |
| COURT FROM WHICH APPEALED: | WILKINSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GARY DALE THRASH |
| ATTORNEY FOR APPELLEE: | R. L NETTERVILLE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND RENDERED - 6/20/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/11/96 |

**BEFORE PRATHER, P.J., PITTMAN AND SMITH, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Milliken & Michaels, Inc. appeals the October 20, 1992, decision of the Wilkinson County Circuit Court, wherein summary judgment was granted to Fred Netterville Lumber Co. The trial judge ruled that Netterville did not owe the money Milliken claimed was erroneously paid to it, and imposed Rule 11 sanctions against Milliken. Milliken raises the following issues on appeal:

**I.**

**WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE, FRED NETTERVILLE LUMBER COMPANY AND DENYING SUMMARY JUDGMENT IN FAVOR OF APPELLANT, MILLIKEN & MICHAELS, INC.**

**II.**

**WHETHER THE TRIAL COURT ERRED IN AWARDING SANCTIONS PURSUANT TO RULE 11, OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE IN FAVOR OF APPELLEE, FRED NETTERVILLE LUMBER COMPANY AGAINST MILLIKEN &**

MICHAELS, INC.

## STATEMENT OF THE CASE

¶2. On March 24, 1992, Milliken & Michaels, Inc., a collection agency, filed a complaint against Netterville Lumber Company, a former client, seeking reimbursement of an incorrect payment of $4,250.00, along with attorney's fees in the amount of $1,416.67 plus interest. In its answer, Netterville requested Rule 11 sanctions, asserting that the suit was frivolous.

¶3. On June 29, 1992, Milliken filed a Motion for Summary Judgment, to which Netterville responded with its own summary judgment motion. The trial court granted summary judgment to Netterville, finding that Milliken did not act with the utmost good faith and loyalty under principles of agency law. Following this decision, Milliken timely perfected this appeal.

## STATEMENT OF THE FACTS

¶4. Milliken & Michaels, Inc. is a Louisiana corporation which is in the business of collecting delinquent accounts for creditors. On April 6, 1991, Rutland Lumber Company (Rutland) engaged Milliken's services with regard to a delinquent account from Bacon Lumber Company (Bacon) in the amount of $11,586.38. On April 22, 1991, Fred Netterville Lumber Company also procured Milliken's services with regard to an additional delinquent account from Bacon in the amount of $23,105.23.

¶5. Milliken met with some success in its collection efforts, and on April 26, 1991, Bacon remitted a $5,000.00 payment designated as partial payment for the Netterville account. Milliken subtracted its $750.00 collection fee and sent the balance to Netterville. On May 20, 1991, Bacon remitted another $5,000.00 as partial payment for the Rutland account. Milliken subtracted its collection fee, but mistakenly sent the $4,250.00 check to Netterville rather than Rutland. Netterville duly credited Bacon for two payments on its delinquent account in the amount of $10,000.00, even though the check clearly indicated that it was intended as payment for Rutland. Milliken, realizing its mistake, notified Netterville of the error and asked that the payment be returned.

¶6. Netterville responded by closing its account with Milliken and refusing to return the payment. Fred Netterville testified at the summary judgment hearing that he did not know that Milliken had been collecting for Rutland. He stated that Netterville would not have employed Milliken had it known that Milliken was representing other businesses in collecting from Bacon. Netterville also stated that he terminated the contract with Milliken because Milliken acted irresponsibly, because their attitude reflected a lack of interest in Netterville, and because he felt that there was a conflict of interest in Milliken's representing the two lumber companies.

¶7. After Netterville refused to return the payment, Milliken filed suit in the Wilkinson County Chancery Court, seeking reimbursement of the second $4,250.00 check it sent to Netterville. Milliken claimed that it erroneously paid Netterville and that Netterville was unjustly enriched by Milliken's mistake. Netterville admits that it received two payments, less the commission fee charged by Milliken for collection services. According to Netterville in its answer, Milliken solicited their company and was hired to collect on the Bacon account "promising to use reasonable diligence and to act as agent and would act solely in the interest of Netterville." Netterville was successful on the

summary judgment motion based on an agency theory.

## ANALYSIS OF THE LAW

¶8. Both parties assert that there are no issues of fact, but rather only issues of law to be decided, thus making a summary judgment decision appropriate. Netterville asserts that Milliken was hired in an agent capacity, and that this case should thus be decided according to principles of agency law. Milliken, on the other hand, contends that this case should be decided under principles of basic contract law. Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Pearl River City Bd. of Supervisors v. South East Collections Agency, Inc.,* 459 So. 2d 783, 784-5 (Miss. 1984) (citing M.R.C.P. 56).

### I.

**WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE, FRED NETTERVILLE LUMBER COMPANY AND DENYING SUMMARY JUDGMENT IN FAVOR OF APPELLANT, MILLIKEN & MICHAELS, INC.**

¶9. Netterville asserts that, under agency law, an agent may not act for two principals if the interests of one conflict with the other, and that he must act with the utmost good faith and loyalty. (citing Judge Griffith, *Outlines of the Law,* 340 (1949)). While this may be true, Milliken's breach of that duty, if any, does not justify Netterville's retention of funds paid it by mistake.

¶10. Milliken laments that Netterville is unjustly enriched. This is not to be confused with unjust enrichment in contract cases, which applies to situations "where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain . . ." *Koval v. Koval,* 576 So. 2d 134, 136 (Miss. 1991)[citations omitted].

¶11. The most helpful case available in our jurisprudence proves to be *U.S.F. & G. v. Newell,* 505 So. 2d 284 (Miss. 1987), as cited by Milliken. Netterville complains that this case involves an overpayment between an insurer and an insured and has "nothing to do with the principal and agent relationship." *Newell*, however, does contain many similarities with the present case and, as such, is entitled to substantial weight in this opinion. In *Newell,* U.S.F. & G. made a mistake in calculations and paid its insured $2,091.72 above the actual cash value of a wrecked vehicle. *Newell,* 505 So. 2d at 286-87. This Court reversed a jury verdict in favor of the insured, declaring that Newell was not entitled to keep the money.

¶12. Although *Newell* concerns an insurer/insured relationship, its principles can be easily applied between the parties in the case *sub judice.* Netterville received money from Milliken by mistake and should have not be entitled to profit by this mistake. *Newell* quotes at length from *Bessler Movable Stairway Co. v. Bank of Leakesville,* 140 Miss. 537, 106 So. 445 (1925) which states:

Money paid to another by mistake of fact, although such mistake may have been caused by

payor's negligence, may be recovered from the person to whom it was paid, in an action for money had and received. [cites omitted] The ground on which recovery is allowed is that one receiving money paid to him by mistake should not be allowed to enrich himself at the expense of the party who paid the money to him by retaining it, but in equity and good conscience should refund it. In order that this rule may apply, the party to whom the payment mistake was made must be left in the same situation after he refunds it as he would have been left had the payment not been made. [cite omitted].

*Id.* at 287.

¶13. *Newell* and *Bessler* are not entirely on point, given that, in this case, Netterville was actually owed the money which was mistakenly paid to it. As such, this Court is not faced with a clear-cut case of unjust enrichment, given that Netterville arguably had a right to the money paid to it. Nevertheless, this Court finds that the $ 4,250 payment mistakenly made to Netterville should have been returned, given that a debtor such as Bacon should be able to choose to which creditors it pays which amounts of money. The check clearly indicated on its face that it was intended as payment by Bacon for his debt owed to Rutland, and, as such, should have put Netterville on notice that the payment was not intended for them. It is undisputed that Bacon intended that the money in question be paid to Rutland, and this Court is unwilling to endorse the transfer of property by mistake or accident.

¶14. Netterville did not present any evidence at the hearing or in its affidavit that it had relied upon the extra $4,250.00 nor that it would suffer any special damages should it have to remit the money to Milliken. Nor did Netterville's establish that it was damaged in any way, whatever, by Milliken's supposed conflict of interest. An entity is entitled to a directed verdict for the restitution of money unless it can be shown that the other significantly changed its position in reliance on the overpayment. *Bank of Belmont v. Judson Lumber Co.,* 143 Miss. 86, 108 So. 440, 441 (1926). Netterville is unable to make such a showing, and, as such, Milliken, rather than Netterville, should have been granted summary judgment.

¶15. Netterville cites *Van Zandt v. Van Zandt,* 86 So.2d 466 (Miss. 1956), which cites **Corpus Juris Secundum,** "Agency" § 159 for the proposition that:

It is the duty of an agent who has received or collected money for his principal to notify the latter at once, and ordinarily he should pay over such money to the principal as soon as, or within a reasonable time after, it is received or collected, or apply and dispose of it according to the directions of the principal.

¶16. Clearly, this correct statement of agency law does not apply to the facts of the present case. In this case, the money was collected not for Netterville, but rather for Rutland. The fact that the money ended up in the hands of Netterville was due to a mistake on the part of Milliken, and accordingly, the aforementioned Mississippi cases dealing with mistaken payments are applicable. This Court thus finds that the trial court was in error in directing a verdict for Netterville and not for Milliken. Accordingly, the judgment of the trial court is reversed.

**II.**

**WHETHER THE TRIAL COURT ERRED IN AWARDING SANCTIONS PURSUANT TO RULE 11, OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE IN FAVOR OF APPELLEE, FRED NETTERVILLE LUMBER COMPANY AGAINST MILLIKEN & MICHAELS, INC.**

¶17. Trial courts possess the power to impose sanctions upon parties and their attorneys when, in the opinion of the court, the suit filed is "frivolous or filed for the purpose of harassment or delay." M.R.C.P. Rule 11. "[A] pleading or motion is frivolous within the meaning of Rule 11 only when, objectively speaking, the pleader or movant has no hope of success." *Tricon Metals & Services, Inc. v. Topp,* 537 So. 2d 1331, 1335 (Miss. 1989). The purpose behind Rule 11 sanctions is to keep frivolous suits at a minimum because they impose unnecessary costs on individuals, the courts, and the public as a whole. *Tricon,* 537 So. 2d at 1135. Obviously, given that this Court has reversed the trial court in favor of Milliken, we also reverse with regard to the granting of Rule 11 sanctions. Rule 11 sanctions were inappropriate in this case because it is conceivable that Milliken thought it had an arguable claim, and the granting of said sanctions by the trial court is therefore reversed.

¶18. **REVERSED AND RENDERED.**

**LEE, C.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. SULLIVAN, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., BANKS AND MILLS, JJ. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

### SULLIVAN, PRESIDING JUSTICE, CONCURRING:

¶19. I concur with the conclusion reached by the majority. I write separately to clarify potentially misleading language contained in the majority opinion.

¶20. The cases relied upon by the majority to reach its conclusion are *U.S.F. & G. v. Newell*, 505 So. 2d 284 (Miss. 1987), and *Bessler Movable Stairway Co. v. Bank of Leakesville*, 140 Miss. 537, 106 So. 445 (1926). Both cases deal with money mistakenly paid and the action upon which the parties, an action based upon quasi-contract. Although not expressly stated, the majority is holding that Milliken stated an action sufficient to establish a common-law action of assumpsit, ex contractu, for money had and received under an implied contract. While this may not be the majority's intent, I write separately to clarify any confusion today's opinion may engender.

¶21. The majority states that "this Court is not faced with a clear-cut case of unjust enrichment . . ." alluding to the fact that the cases it relied on, *Newell* and *Bessler*, are cases of unjust enrichment. *Newell* relied on *Bessler* which was a case of money had and received, a different action at law than unjust enrichment. Although the remedy of "restitution" encompasses, among others, theories of unjust enrichment, and money had and received, they are two different types of restitution. The application of unjust enrichment is guided by the equitable principle of avoiding unjust enrichment at the expense of another, *Cablevision of Breckenridge v. Tannhauser Condominium Ass'n*, 649

P.2d 1093 (Colo. 1982), while an action for money had and received will lie when one has received money that in good conscience and equity ought to be paid over to another. *Wheeler v. Wilkin*, 58 P.2d 1223 (Colo. 1936).

¶22. "The assumpsit action for money had and received is in quasi-contract." *R.R. Tway v. Oklahoma Tax Comm'n*, 910 P.2d 972, 980 (Okla. 1995) (citing *Winey v. Dailey*, 636 A.2d 744, 751 (Vt. 1993); *Williams v. Khalaf*, 802 S.W.2d 651, 656 (Tex. 1990); *Boldt v. State*, 305 N.W.2d 133, 138 (Wis. 1981); *Town of Westport v. Bossert Corp.*, 335 A.2d 297, 299 (Conn. 1973); *United States Fidelity and Guaranty Ins. Co. v. Hartsook*, 487 S.W.2d 649, 651 (Tenn. 1972); *Witmer v. Estate of Brosius*, 336 P.2d 455, 458-59 (Kan. 1959); Ames, *The History of Assumpsit*, 2 Harv. L. Rev. 1, 63-64 (1888)). The principle of a quasi-contract is that it is a contract implied by law. The elements of a quasi-contract are: 1) a benefit conferred upon the defendant by the plaintiff, 2) appreciation by the defendant of the fact of such benefit, 3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of its value. *Seegers v. Sprague*, 236 N.W.2d 227 (Wis. 1975). *See also Maloney v. Therm Alum Indus., Corp.*, 636 So. 2d 767 (Fla. 1994); *Columbia Wholesale Co. v. Scudder May N.V.*, 440 S.E.2d 129 (S.C. 1993); *Employers Ins. of Wausau v. Crane Co.*, 904 S.W.2d 460 (Mo. Ct. App. 1995); *Bailey-Allen Co. v. Kurzet*, 876 P.2d 421 (Utah Ct. App. 1994); *Robinowitz v. Pozzi*, 872 P.2d 993 (Or. Ct. App. 1994).

¶23. "In an action for money had and received, the plaintiff need only allege and show that the defendant holds money which in equity and good conscience belongs to the plaintiff." *Dorsey Mississippi Sales v. Newell*, 251 Miss. 77, 91, 168 So. 2d 645, 651 (1964) (citing *Pascagoula Hardwood Co. v. Chisholm*, 164 Miss. 242, 144 So. 710 (1932)). Although this form of action is ordinarily one at law, it is governed by equitable principles.

¶24. Accordingly, I concur with the majority's ultimate disposition of this case. I write only to clarify the basis for which I believe the majority came to the just conclusion.

**LEE, C.J., BANKS AND MILLS, JJ., JOIN THIS OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶25. In this case, the collection agency, acting as agent for both Rutland Lumber Co. and Netterville Lumber Co., was collecting from the same debtor without advising either principal. The agent, therefore, was in the position of determining when and how much of the debt collected each of its principals should receive -- a matter that should have been left to Rutland and Netterville to resolve between themselves. It was only when Netterville accidentally received a check intended for Rutland, however, that Netterville learned that Milliken & Michaels represented another principal with competing interests. Because an agent cannot serve two principals whose interests conflict without advising them of its roles, I dissent.