BANKSTON *v.* HILL.

[98 So. 689. No. 23699.]

(Division B. Jan. 28, 1924.)

1. SALES. *Title held only as security; property recovered by conditional seller must be dealt with as security.*

The seller of personal property may make a conditional sale thereof, reserving title until payment of the purchase price, but such

reservation of title is only as security for the purchase price, and, if the property is recovered by the seller, he must deal with it as security, and with due regard to the equitable rights of the purchaser.

2. SALES. *That repossession on default, regained without legal proceedings, does not affect validity or alter obligation.*

Where personal property is sold and delivered under a contract of conditional sale, the vendee's right of possession is terminated upon default in the payment of the stipulated price, and after such default on the part of the vendee, the vendor has the right to demand possession of the property, and the fact that possession thereof is regained without the aid of legal proceedings does not destroy his right to his possession, and does not alter the obligation to deal with it as security only.  -

APPEAL from chancery court of Coahoma county, Second District.

HON. G. F. WILLIAMS, Chancellor.

Suit by Mrs. I. P. Bankston against A. Hill. From a decree for defendant, plaintiff appeals. Reversed and remanded.

*Maynard, FitzGerald & Venable,* for appellant.

The only question involved is: "Where property is sold and title is retained until the purchase price is paid, does the retaking of the property discharge the debt?" This question was answered in the affirmative by the court below, and this position is sustained by some decisions.

But as we understand it, the doctrine in Mississippi is that a title retention note is looked upon in legal effect as mere security for the purchase price; in short, a chattel mortgage; and all the results of so considering it follow. It is, therefore, not the law in Mississippi that the retaking of the property is the rescission of the sale. Mr. Williston, in his work on contracts, section 737, aligns himself with the rule in Mississippi.

134 Miss.—19.

The following Mississippi cases are in point: *Duke* v. *Shackleford,* 56 Miss. 552; *Dederick* v. *Wolfe,* 68 Miss. 500; *Foundry Co.* v. *Pascagoula Ice Co.,* 72 Miss. 615; *Rodgers* v. *Whitehead et al.,* 127 Miss. 21.

The ruling of the chancellor in the court below was directly in the face of the decisions of this court. The doctrine of the Mississippi supreme court is sound as to legal theory, effectuates the intent of the parties at the time of the conditional sale, and really carries out the intent of the parties according to the terms of their contract in holding that the retaking of the property is not a rescission of the contract of sale but an enforcement of it.

*Flowers & Brown* and *Brewer & Brewer,* for appellees.

This automobile was taken away without any authority of law and over the protest, and against the wishes of the appellees. Instead of pursuing the legal remedy afforded her, appellant, through her husband and agent, took the law in her own hands and went to the home of appellees and took the automobile away.

It is contended that there is a conflict between the Mississippi decisions and the decisions of the other courts. In our opinion, counsel for appellant misconstrue the meaning of the word "retaking." We have not been able to find any case from any court wherein a seller was allowed to take from the purchaser the property sold, over the objection and protest of the purchaser, and without any authority or process of law, and then recover over on the notes evidencing the balance of the purchase price.

The Mississippi cases cited in appellant's brief are not in point. They do not touch the issue in the case at bar. The facts in our case do not fit in with the facts in either of the Mississippi cases. They are altogether different. An altogether different principle of law is involved.

On the direct questions involved in this appeal there are many cases in point. *Sanders* v. *Newton,* 140 Ala. 335; *Peasley* v. *Noble,* 17 Idaho, 686, 134 A. S. R., 270; *Turk* v. *Carnhan,* 29 Ind. App. 125, 81 A. S. R. 85; *Madison River Live Stock Company* v. *Osler,* 39 Mont. 244, 133 A. S. R. 558; *Perkins* v. *Grobben,* 116 Mich. 172, 72 A. S. R. 512; *McRea* v. *Mansfield,* 48 Ark. 160; *Bailey* v. *Hervey,* 135 Mass. 172; *McBryan* v. *Universal Elevator Company,* 130 Mich. 11, 97 A. S. R. 453; *Minneapolis Harvester Works* v. *Halley,* 27 Minn. 495; *Manson* v. *Dayton,* 135 Fed. 258.

Another question precludes appellant from any standing or relief in a court of equity. The ancient maxim, "He who comes into equity must come with clean hands," has direct application here. Any wilful act in regard to the matter in litigation which would be condemned and pronounced wrongful by honest and fair-minded men will be sufficient to make the hands of the applicant unclean.

Appellant's act in going to the home of appellees, on a Sunday afternoon, and taking therefrom, without their permission or consent, and over their objection and protest, the automobile in question was illegal, unwarranted, unjust, unfair and inequitable, and such as would be condemned and pronounced wrongful by honest and fair-minded men.

Cook, J., delivered the opinion of the court.

A. Hill and wife, appellees, purchased from Mr. Will Counts an automobile, and to evidence a part of the purchase price executed notes aggregating two thousand nine hundred and thirty-five dollars. The payment of these notes was secured by a deed of trust on forty acres of land belonging to the appellees, and also by a reservation in the notes of title to the automobile. These notes and the deed of trust were transferred and assigned to the appellant. Afterwards the appellant exhibited

her bill of complaint in the chancery court of the second district of Coahoma county, seeking a personal decree against the defendants for the balance due on these notes, and also seeking to foreclose the lien of the deed of trust, and also to enforce the lien created by the reservation of title in the notes. The defendants answered the bill and made their answer a cross-bill, seeking the cancellation of the deed of trust. Upon the final hearing the chancellor entered a decree dismissing the bill of complaint, and granting the relief prayed for in the cross-bill, and from this decree this appeal was prosecuted.

The facts disclosed by this record are substantially as follows: The appellees having failed to pay the notes, about the 1st of January, 1922, the appellant, accompanied by her husband, W. L. Bankston, went to the home of appellees and took the automobile and carried it to her home in Tunica, Miss. According to the testimony of W. L. Bankston he, acting as the agent of his wife, entered into an arrangement with appellees whereby he was to take the automobile, have it repaired, and sell it for the best price obtainable, and apply the proceeds of the sale on the indebtedness. The appellees denied that any such arrangement or agreement was entered into, and they testified that the automobile was taken from them without their consent and over their protest.

The record shows by the testimony of both parties that there was no agreement that the automobile was to be taken in satisfaction of the debt, and both W. L. Bankston and A. Hill, one of the appellees; testified that a few days after the automobile was taken by the appellant a conference about the matter was held in the city of Clarksdale, and that Bankston there endeavored to obtain a bill of sale to the automobile, but Hill refused to execute any such conveyance, and shortly there-

after the appellant filed the bill of complaint in this cause.

From the briefs of counsel it appears that they are in agreement that the only question presented for decision is whether the retaking of personal property without legal process discharges a debt incurred for the purchase price of such property, where the property had been sold and title retained until the payment of the purchase price.

There is ample authority in other states for the view that, if the seller of property to which title is retained takes back the property, by so doing he rescinds the sale and cannot enforce the contractual obligation to pay the purchase money, for the reason that since the act of retaking is a rescission of the sale, there is no longer any consideration to uphold the promise to pay.

In this state, however, the court has frequently had under consideration the rights of the parties under conditional sales contracts, and the effect of the recovery of the possession of the property, and the doctrine is thoroughly established in this state that where property is sold on condition the title shall not pass until all the purchase price has been paid, such reservation of title is merely security for the purchase price, and that, at any time after default, the seller may retake the property and deal with it as security for the payment of the stipulated price and in reference to the equitable rights of the purchaser.

In the case of *Duke* v. *Shackleford,* 56 Miss. 552, it was held that where personal property was sold and title reserved until the payment of the purchase price, the purchaser's right of possession terminated when default was made in the payment of the stipulated price, and that the vendor could then recover the property from the vendee without offering to refund what had been paid, and, in commenting on this character of contract, the court said:

"It was not necessary that he should pay back, or tender the money received as the cash payment. This is only necessary in cases of disaffirmance and rescission of a sale on condition subsequent. But this was a sale on condition precedent; that is, there was to be no sale, properly so called, no change of title, until the full price should be paid; and the law annexes to such a sale a right in the seller to recover possession of his property upon default made, even against subsequent *bona-fide* purchaser for value without notice. In reclaiming his propety, therefore, the seller is not rescinding the contract, but is enforcing it; and hence there is no obligation to tender back any thing."

In the case of *Dederick* v. *Wolfe,* 68 Miss. 500, 9 So. 350, 24 Am. St. Rep. 283, the court said:

"The transaction was plainly a sale, with reservation of title as security for the price, and resorting to the press as means of security payment of the note was in pursuance of the contract, and did not preclude a recovery on the note. . . . The title was retained by the seller for the very purpose of being made available to the payment of the money promised, and it would be a strange result if the exercise of this undoubted right by the seller as stipulated for by the buyer, should preclude a recovery on the promise which by its terms was to admit of no defense. . . . It would be a most unreasonable interpretation of the contract to hold that Dederick's taking possession of the press was an abandonment of his claim to be paid what had been promised and not paid. There is no express provision to that effect, and to give such effect to Dederick's act is to cause a forfeiture of his right to be paid in full, at all events, as promised by the buyer, while the other view does justice to both parties, according to their contract, by allowing the seller what he was promised and the buyer what was purchased, and treating the press as it

was intended to be, as a security for the payment of the stipulated price.''

In the case of *Foundry Company* v. *Pascagoula Ice Co.,* 72 Miss. 615, 18 So. 364, the court said:

''The right of the seller of personal property to make a conditional sale thereof, reserving title until payment of the purchase price, is too firmly settled in this state to admit of controversy. [Citing authorities.] But the reservation of the title is but as security for the purchase price, and, if the property is recovered by the seller, he must deal with it as security, and with reference to the equitable rights of the purchaser.''

See, also, the cases of *Burnley* v. *Tufts,* 66 Miss. 48, 5 So. 627, 14 Am. St. Rep. 540; *Tufts* v. *Stone,* 70 Miss. 54, 11 So. 792; *McPherson* v. *Lumber Co.,* 70 Miss. 649, 12 So. 857; and *Rogers* v. *Whitehead,* 127 Miss. 21, 89 So. 779.

The appellees contend, however, that the foregoing cases are not applicable to the facts in the case at bar, for the reason that in each of those cases the vendor recovered possession of the property by means of legal process, while in the present case the holder of the securities retook the property sold, over the objection and protest of the purchasers, and without any authority or legal process, and that her act in so doing was wrongful and amounted to a rescission of the contract. This view is not maintainable. The retaking of the property under the circumstances in evidence here did not constitute an election by the appellant to rescind the contract of sale. Upon default in the payment of the stipulated price the vendee's right of possession terminated, and the vendor had the right to regain the possession of the property, not to convert it to her own use, but to deal with it as security for the payment of the stipulated price and with due regard for the equitable rights of the vendees. After default on the part of the vendees, the vendor had the right to demand possession

of the property, and the fact that she regained posses-
sion thereof without the aid of legal proceedings did
not destroy her right to its possession, and did not alter
her obligation to deal with it as security only. This she
was attempting to do by filing her bill in the chancery
court and seeking to have the property sold by a com-
missioner of the court and the proceeds applied to the
payment of the indebtedness.

The judgment of the court below dismissing the bill
of complaint and decreeing a cancellation of the notes
and deed of trust will therefore be reversed, and the
cause remanded.

*Reversed and remanded.* ·