REFUGE COTTON OIL CO. *v.* TWIN CITY FIRE INS. CO.*

(Division A. Jan. 28, 1929. Suggestion of Error Overruled Feb. 11, 1929.)

[120 So. 214. No. 27620.]

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2573, p. 675, n. 62; Fire Insurance, 26CJ, section 115, p. 113, n. 86; As to effect of breach of policy of insurance by mortgagor on rights of mortgagee, see annotation in 18 L. R. A. (N. S.) 197; 25 L. R. A. (N. S.) 1226; 14 R. C. L. 1085; 3 R. C. L. Supp. 339; 4 R. C. L. Supp. 938; 6 R. C. L. Supp. 856.

*Montgomery & Montgomery,* for appellant.

*Chancy & Culkin* and *R. L. McLaurin,* for appellee.

Argued orally by *M. V. B. Montgomery,* for appellant, and *A. A. Chaney,* for appellee.

McGowen, J. The Refuge Cotton Oil Company, appellant, filed its declaration against the Twin City Fire Insurance Company in the circuit court of Humphreys county, demanding a recovery of the sum of one thousand two hundred thirty-nine dollars and twenty-two cents with interest, the amount of unearned premiums paid by the former to the latter.

The declaration alleged, in substance, that on and before June 22, 1927, J. J. Cain owned certain gins in this state, upon which the appellant held a mortgage at that time, and procured the appellee, through its agents to deliver thirteen policies of fire insurance, and sets out the date, number, and amount of premium paid on each policy, each in force for one year from its date.

To each of these policies the usual mortgage clause was attached, payable to the appellant as its interest might appear.

Under the terms of the mortgage to the appellant, Cain, the mortgagor, covenanted to insure and keep insured, at his expense, the gins therein covered, with the mortgage clause attached, payable to appellant, and that the debt created for the insurance premium was the debt of Cain; and, further, the mortgage provided that if Cain failed to pay the said insurance premiums, the appellant might pay same for Cain, and charge same to his account. At the time the policies of insurance were taken out, Cain was, and now is, insolvent, and the security held by appellant against Cain was wholly inadequate; which in-

solvency of Cain and inadequacy of security continued to the date of the cancellation of the insurance by the appellee.

The declaration further charged: That Cain did not pay any of said premiums, and, that being true, the agents of appellee made out a statement covering insurance premiums due by Cain and attached same to a draft for the whole amount, drawn on the Refuge Cotton Oil Company, appellant, payable to the Citizens' Bank & Trust Company, Belzoni, Miss., reciting on said draft, "For premiums J. J. Cain Gin Policies." This draft was paid by appellant on June 25, 1927. And that said agents were authorized to draw said draft.

It is also alleged that immediately upon the payment of said draft the appellee canceled all of the policies described, which were by appellant immediately surrendered to appellee, and that thereby there was due to appellant from the appellee the amount of said unearned premium, which became and was the property of appellant, and should' have been returned to it.

The appellee interposed a demurrer to the amended declaration, as follows:

"First: The amended declaration states no cause of action against the Twin City Fire Insurance Company.

"Second: The amended declaration shows on its face that there is no privity of contract between the Refuge Cotton Oil Company and the Twin City Fire Insurance Company.

"Third: The amended declaration shows on its face that whatever premiums were paid for the insurance in question by the Refuge Cotton Oil Company were paid under the obligation of the contract between the Refuge Cotton Oil Company and J. J. Cain, and that by virtue of said contract, said amount so paid was to be and was charged by the Refuge Cotton Oil Company to J. J. Cain.

"Fourth: The amended declaration does not show that there was any unearned premiums due to be returned to plaintiff because of the alleged cancellation.

"Fifth: The amended declaration does not show that the policies were effectually cancelled as to all parties in interest.

"Sixth: And for other causes to be assigned."

The court below sustained the demurrer, and, the plaintiff declining to amend or plead further, the cause was dismissed and appeal prosecuted to this court.

First, in answer to the appellee's contention that the declaration did not set forth, as an exhibit thereto, the insurance policies, nor the mortgage referred to therein, and that this court cannot consider that part of the mortgage, or those parts of the insurance policies not set forth in the declaration, this is true.

Appellee is seen further to argue that the declaration is demurrable because the documents mentioned above were not made exhibits. To this contention, if it is argued, we only say that, if appellant has a cause of action, it is for money paid and received, and not upon the contract of insurance nor the various insurance policies; and the rule is that the failure to attach necessary documents as exhibits to a declaration renders evidence pertaining thereto inadmissible, upon objection; and where the declaration states a cause of action independent of writings referred to, demurrer will not lie. See section 734, Code of 1906, section 531, Hemingway's 1927 Code.

Second, the declaration alleges that the usual mortgage clause was attached to the insurance policies issued by the appellees and surrendered by the appellant for cancellation, and in this state thereby become a part of these policies, section 2596, Code of 1906, section 5854, Hemingway's 1927 Code, to which we do refer in order to determine whether or not the facts set forth above

show privity of contract between the insurance company and the cotton oil company.

The last clause of this section is as follows:

"Provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee (or trustee) shall, on demand, pay the same."

In this case the mortgagor did not pay and, according to the allegations of the bill, was insolvent, not coercible, and unable to pay; and by drawing the draft on appellant, the appellee, the insurance company, made demand upon the mortgagee, to which demand the mortgagee responded by paying the full amount of the draft; and immediately the insurance company canceled all of the policies.

The insurance company seems to argue here that because, under the terms of the mortgage set out in the declaration, the cotton oil company had a right to hold Cain, its mortgagor, for the insurance premium so paid, and that by the payment Cain became its debtor, therefore the insurance company could not be the debtor of the cotton oil company, and says there is no privity of contract between appellant and appellee.

The section quoted, *supra,* has been several times construed by this court to the effect that this clause in a fire insurance policy has the effect of creating a contract between the insurance company and the mortgagee, which contract is new and independent of the contract between the owner, the mortgagor, and the insurance company, and that although the original policy was void as between the owner and the insurance company, that fact did not in any way invalidate the independent contract of insurance between the mortgagee and the insurance company. This court has also held several times that the mortgagee has a right to have an independent contract, protecting his insurable interest in the property insured. See *Bacot* v. *Phœnix Ins. Co.,* 96 Miss. 223,

50 So. 729, 25 L. R. A. (N. S.) 1226, Ann. Cas. 1912B, 262, in which case the court said as follows:

"It seems to us that those decisions wholly misconceive the true principle which should control, and overlook the fact that the contract of insurance made with the mortgagee is independent; that is, free from the provisions and purposes of the contract with the owner, and made for the purpose of securing the interest of the mortgagee. . . .

"If, then, the contract between the mortgagee and the insurance company is a wholly independent contract from that of the original owner or mortgagor, how can it be that any but the conditions contained in the mortgagee's contract affect his rights? His rights are independent, not derivative from the mortgagor's contract. Under this independent contract, he is not a mere appointee of the mortgagor to receive the proceeds of the policy, in case of loss, by virtue of and under the contract of the mortgagor, but the mortgagee gets an independent right, an independent contract with the insurance company, *whereby the insurance company insured his individual interest in the property. . . .*" (Italics ours.)

To the same effect are the cases of *Hartford Fire Ins. Co.* v. *Buckwalter Lbr. Co.*, 116 Miss. 822, 77 So. 798, and *Scottish Union & Nat. Ins. Co.* v. *Warren Gee Lbr. Co.*, 118 Miss. 740, 80 So. 9.

So thoroughly does this statute, written into an insurance policy, divorce the mortgagee from the mortgagor, as related to the policy, that this court has held that the mortgagee may maintain *in his own name* an action on the policy, where, as in this case, the mortgage indebtedness exceeds the face of the policy and the total value of the property. *Lowry* v. *Ins. Co. of No. America*, 75 Miss. 43, 21 So. 664, 37 L. R. A. 779, 65 Am. St. Rep. 587; *Stuyvesant Ins. Co.* v. *Smith Motor Sales Co.*, 135 Miss. 585, 99 So. 575.

We have before us a case where the mortgagee has insufficient security for the debt of a mortgagor who is insolvent, and who cannot be made to carry out his contract and insure the property, and in that state of case the insurance company demanded payment by drawing a draft for a considerable sum, as premiums for insurance on the mortgaged property, the cotton oil company pays the draft, and immediately thereupon the insurance company, having invested itself with the mortgagee's money, cancels the policies and insists that it cannot be made to return the unearned premiums to the mortgagee, because there is no privity of contract, and because the mortgagor owes the money to the mortgagee.

The appellant paid the premiums to protect its insurable interest in this mortgaged property, and by cancellation of the policies the insurance company deprived it of this valuable and essential means of protecting itself; and, the insurance being canceled, the appellant was entitled to a return of its money, in order that it might seek protection elsewhere, or otherwise.

We think it clear that in this state of case there is privity of contract, that the action is one for money paid by the appellant and received by the appellee, and that by the demand of the insurance company and the payment by the mortgagee there was created under this independent contract the relation of debtor and creditor; and the fact that the cotton oil company might have the vain, useless, and futile right to charge this payment to the mortgagor could not operate to destroy the relation of debtor and creditor between the insurance company and the mortgagee. "Privies" are described as persons who are partakers of or have an interest in any action or thing. See case of *Lillian Roarke* v. *Alfred Roarke,* 77 N. J. Eq. 181, 75 A. 761; also, 32 Cyc. 388.

The demurrer in this case should have been overruled. Therefore the case will be reversed and remanded, with

leave to the appellee to file its plea within sixty days after the rendition of this opinion.

*Reversed and remanded.*